RECEIVED
USDC, CLERK, CHARLESTCH. S

2008 SEP 18 P 2: 3.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Alice L. Lawrence,              )     C. A. No. 2:07-2722-MBS-RSC
                                )
              Plaintiff,        )
                                )
         -versus-              )     **REPORT AND RECOMMENDATION**
                                )
Veolia Transportation           )
Services, Inc.,                 )
                                )
              Defendant.        )

This employment discrimination case alleging violations of Title VII, 42 U.S.C. § 2000e et seq. (Title VII), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et. seq. (ADEA), with two appended state law causes of action is before the undersigned United States Magistrate Judge for a Report and Recommendation on the defendant's motion for summary judgment. 28 U.S.C. § 636(b).

The defendant filed a motion for summary judgment on July 2, 2008. The plaintiff opposed the motion on August 10, 2008, and the defendant filed a reply on August 19, 2008. Oral argument on the motion was had before the undersigned on August 12, 2008. Discovery is closed. Hence it appears that consideration of the motion is appropriate.

On August 7, 2007, Plaintiff Alice Lawrence, filed the instant action against her former employer, Veolia Transportation Services, Inc., and alleged that she was subjected to illegal

1

discrimination when her employment was terminated on April 26,
2007, based on her age and race and in retaliation for filing a
prior discrimination claim on June 19, 2005, and for Veolia's
failure to promote her to a Safety Director's position for the
same reasons, all in violation of Title VII and the ADEA.  The
plaintiff also brought state law claims of breach of contract and
defamation.

## ASSERTED GROUNDS FOR SUMMARY JUDGMENT

Defendant contends that it is entitled to judgment as a
matter of law for the following reasons:

1) Lawrence cannot establish a *prima facie* case of race or
age discrimination with respect to Veolia's decision to terminate
her employment and not promote her because she cannot establish
she was replaced by a member outside her class or similarly
situated employees outside her protected class were treated more
favorably.

2) Lawrence cannot establish a *prima facie* case of
retaliation with respect to Veolia's decision to terminate her
employment and not promote her because she cannot establish a
causal connection between her June 19, 2005, EEOC charge and her
termination on April 21, 2006.

3) Veolia has established, through uncontroverted material
facts, its legitimate non-discriminatory reasons for terminating
Lawrence's employment and not promoting her and she cannot

2

present any evidence that Veolia's legitimate non-discriminatory reasons are pretextual and that she was subjected to race and age discrimination and/or retaliation.

4) Veolia is entitled to judgment as a matter of law with respect to Lawrence's breach of employment contract claim inasmuch as she was an at-will employee and no contract for employment, express or implied, existed between Lawrence and Veolia.

5) Veolia is entitled to a judgment as a matter of law with respect to Lawrence's defamation claim because Stevens' statement was not false and defamatory, did not identify Lawrence, and said statement was qualifiedly privileged.

**SUMMARY JUDGMENT STANDARD**

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. v. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most

3

favorable to the non-moving party.  <u>Perini Corp. v. Perini</u>
<u>Constr., Inc.</u>, 915 F.2d 121, 123-23 (4th Cir. 1990).  Once a
motion for summary judgment is properly made and supported, the
opposing party has the burden of showing that a genuine dispute
exists.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475
U.S. 574, 586-87 (1986).  "[W]here the record taken as a whole
could not lead a rational trier of fact to find for the non-
moving party, disposition by summary judgment is appropriate."
<u>Teamsters Joint Council No. 83 v. CenTra, Inc.</u>, 947 F.2d 115, 119
(4th Cir. 1991); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
248-49 (1986).  Unsupported speculation is not enough to
withstand a motion for summary judgment.  <u>Ash v. United Parcel</u>
<u>Service, Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986).  Indeed, the
court should draw reasonable inferences on behalf of the
non-moving party, but it must not slip into "sheer speculation."
The court may not move beyond inference and into the realm of
mere conjecture.  <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230,
242 (4th Cir. 1982).

## **RACE DISCRIMINATION IN EMPLOYMENT LAW**

     Title VII makes it an unlawful employment practice for an
employer "to fail or refuse to hire or to discharge any
individual, or otherwise to discriminate against any individual
with respect to his compensation, terms, conditions, or

4

privileges of employment, because of such individual's ...
race... ."   42 U.S.C. § 2000e-2(a)(1).

A plaintiff can prove defendant's motive to discriminate by
two methods.  First, the plaintiff may meet this burden under the
ordinary standards of proof by direct evidence relevant to and
sufficiently probative of the issue.  Direct evidence is
"[e]vidence, which if believed, proves existence of fact in issue
without inference or presumption."  Black's Law Dictionary, 460
(6th Ed.1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.
Ct. App. 1974)).  Direct evidence is evidence that, by itself,
proves the discrimination.  See, Williams v. General Motors
Corp., 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S.
943, 102 S.Ct. 1439 (1982).  This is in contrast to
circumstantial evidence which is evidence from which
discrimination may be inferred.

In the alternative, a plaintiff may resort to the judicially
created burden shifting scheme established in McDonnell-Douglas
Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Community
Affairs v. Burdine, 450 U.S. 248 (1981); EEO v. Clay Printing
Company, 955 F.2d 936 (4th Cir. 1992).  The United States Supreme
Court articulated a three-part analysis for analyzing
discrimination claims in McDonnell Douglas.  First, Plaintiff
must establish a *prima facie* case of discrimination.  In order to
establish a *prima facie* case of discrimination with regard to her

5

promotion claim, Plaintiff must show the following:  1) that she

is a member of a protected class; 2) that she applied for the

position in question; 3) that she was qualified for the position;

and 4) that she was rejected for the position in favor of someone

from outside of his protected class, or there is some other

evidence giving rise to an inference of unlawful discrimination.

Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th

Cir. 1995), citing Carter v. Ball, 33 F.3d 450, 458 (4th Cir.

1994); see also, Alvarado v. Bd. of Trustees of Montgomery

Community College, 928 F.2d 118, 121 (4th Cir. 1991).

Once a *prima facie* case has been established, a rebuttable

presumption is created that the employer unlawfully discriminated

against the plaintiff.

Second, once this presumption has been established, the

burden of production shifts to the employer to articulate a

legitimate, non-discriminatory reason for its actions.  Third, if

the employer articulates a legitimate, non-discriminatory reason

for its actions, the burden is then on the plaintiff to come

forward with evidence that the employer's asserted reasons for

its actions are a mere pretext for its true discriminatory

motives, and that the actions of the employer were really based

on illegal racial animus.  McDonnell Douglas, 411 U.S. at

802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256.

6

Despite these shifting burdens of production, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see</u> <u>also</u>, <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507, 113 S.Ct. 2742 (1993).

If an employer uses unwise criteria in making personnel decisions, that does not amount to illegal discrimination. <u>See</u>, <u>Jiminez v. Mary Washington College</u>, 57 F.3d 369, 383 (4th Cir. 1995) ("The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment."). Liability can attach only for decisions motivated by illegal racial animus. In the end, the plaintiff in a disparate treatment case such as this must prove that "but for" her race, she would not have been subjected to an adverse employment action. <u>Holmes v. Bevilacaua</u>, 794 F.2d 142 (4th Cir. 1986).

### RETALIATION LAW

Plaintiff also claimed she was not promoted and was discharged in retaliation for her having engaged in activity protected by Title VII. To establish a *prima facie* case of retaliation, a plaintiff must prove three elements: (1) that she engaged in protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment

action.  See, Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745,
754 (4th Cir.), cert. denied, 519 U.S. 818, 117 S.Ct. 70, 136
L.Ed.2d 30 (1996).  Under the burden-shifting scheme, if
Plaintiff succeeds in proving a *prima facie* case, the burden of
going forward shifts to Defendant to provide evidence of a
legitimate non-discriminatory reason for taking the adverse
employment action.  See, e.g., Matvia v. Bald Head Island Manag.,
259 F.3d 261, 271 (4th Cir. 2001); Smith v. First Union Nat'l
Bank, 202 F.3d 234, 248 (4th Cir. 2000).  Should Defendant
articulate a non-discriminatory reason, the burden then shifts
back to Plaintiff to demonstrate that Defendant's proffered
reason is a pretext for retaliation.  Smith, 202 F.3d at 248.
To do so, Plaintiff must demonstrate, through either direct or
circumstantial evidence, "both that the [proffered
nondiscriminatory] reason was false, and that discrimination was
the real reason."  St. Mary's Honor Center v. Hicks, 509 U.S.
502, 515, 113 S.Ct. 2742 (1993) (quoting Texas Dep't of Community
Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981)).
In applying St. Mary's, the Fourth Circuit has held "that to
survive a motion for summary judgment under the McDonnell Douglas
paradigm the plaintiff must do more than merely raise a jury
question about the veracity of the employer's proffered
justification.  The plaintiff must have developed some evidence
on which a juror could reasonably base a finding that

8

discrimination motivated the challenged employment action."
Vaughan v. The Metrahealth Cos., 145 F.3d 197, 202 (4th Cir.
1998); Smith, 202 F.3d at 249. As such, in order to avoid
summary judgment, Plaintiff must present some evidence, either
direct or circumstantial, that Defendant's stated reason for
terminating Plaintiff was a pretext for retaliation.

### AGE DISCRIMINATION LAW

The ADEA makes it unlawful for an employer to fail or refuse
to hire or to discharge any individual or otherwise discriminate
against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such
individual's age. 29 U.S.C. § 623(a)(1); see, Gen. Dynamics Land
Sys., Inc. v. Cline, 540 U.S. 581, 124 S.Ct. 1236, 1243 (2004)
(explaining that the ADEA "protect[s] a relatively old worker
from discrimination that works to the advantage of the relatively
young").

To succeed on an ADEA claim, the plaintiff must demonstrate,
by a preponderance of the evidence, that "the plaintiff's age ...
actually played a role in the employer's decisionmaking process
and had a determinative influence on the outcome." Reeves v.
Sanderson Plumbing Products, Inc., 530 U.S. 133, 141, 120 S.Ct.
2097 (2000). A plaintiff can establish an ADEA claim "through
two alternative methods of proof": (1) a "pretext" framework
that employs the burden-shifting analysis used in Title VII cases

as in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or (2) a "mixed-motive" framework established by the Supreme Court in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). <u>EEOC v. Warfield-Rohr Casket Co.</u>, 364 F.3d 160, 163 (4th Cir. 2004).

In a "mixed motive" case, a showing by direct or possibly[1] circumstantial evidence that age motivated an employer's adverse employment decision need not establish that the employee's age was the sole motivating factor; the plaintiff must only show that his age was a motivating factor in the adverse decision. <u>Id.</u> In a "mixed-motive" case, it is sufficient that the plaintiff-employee show that his employer was motivated to take an adverse employment action by both forbidden and permissible reasons. <u>See</u>, <u>Id.</u>

Direct evidence must be "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude

_____

[1] The Fourth Circuit Court of Appeals not yet decided whether an ADEA plaintiff who lacks direct evidence of discrimination may proceed under the mixed motive approach. <u>See</u>, e.g., <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 285 (4th Cir. 2004) (en banc) (reserving question). Two Circuits have split on the question. Compare <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305 (5th Cir. 2004) (holding that ADEA plaintiff may present direct or circumstantial evidence of discrimination to warrant mixed-motive analysis) with <u>Monaco v. American General Assurance Co.</u>, 359 F.3d 296, 300 (3d Cir. 2004) (stating that ADEA plaintiff must present direct evidence of discrimination to warrant mixed-motive analysis).

and that bear directly on the contested employment decision."
Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999)
(en banc) (citation and internal quotation marks omitted).  Even
if there is a statement that reflects a discriminatory attitude,
it must have a nexus with the adverse employment action.  See,
Brinkley, 180 F.3d at 608 ("To survive summary judgment on the
basis of direct and indirect evidence, Brinkley must produce
evidence that clearly indicates a discriminatory attitude at the
workplace and must illustrate a nexus between that negative
attitude and the employment action.").

To make a *prima facie* showing of age discrimination under
the pretext framework, a plaintiff-employee is obliged to satisfy
four factors, that (1) she is a member of a protected class[2]; (2)
she suffered an adverse employment action; (3) she was at the
relevant time performing her duties at a level that met her
employer's legitimate expectations; and (4) the position remained
open or she was replaced by a substantially younger individual.
O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310-11,
116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); see, Hill v. Lockheed
Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004).

When a *prima facie* case has been presented, an inference of

---

[2]  For ADEA purposes, the protected class is individuals who
are at least 40 years of age.  See, 29 U.S.C. § 631(a) ("The
prohibitions in this chapter shall be limited to individuals who
are at least 40 years of age.").

11

age discrimination arises, and the burden shifts to the employer
to articulate a legitimate, nondiscriminatory reason for the
adverse employment action.  Williams v. Cerberonics, Inc., 871
F.2d 452, 455-56 (4th Cir. 1989).  The employer's burden is one
of production, not persuasion.  Hill, at 285.  If the employer
meets this burden of production "the McDonnell Douglas
framework-with its presumptions and burdens-disappear[s], and the
sole remaining issue [i]s discrimination vel non."  Reeves, 530
U.S. at 142-43, 120 S.Ct. 2097 (internal quotation marks
omitted).

Although intermediate evidentiary burdens shift back and
forth under this framework, the ultimate burden of persuading the
trier of fact that the defendant intentionally discriminated
against the plaintiff remains at all times with the plaintiff."
Id. at 143, 120 S.Ct. 2097 (internal quotation marks and
alteration omitted).  "And in attempting to satisfy this burden,
the plaintiff ... must be afforded the opportunity to prove by a
preponderance of the evidence that the legitimate reasons offered
by the defendant were not its true reasons, but were a pretext
for discrimination."  Id. (internal quotation marks omitted).
Thus, "the plaintiff may attempt to establish that he was the
victim of intentional discrimination by showing that the
employer's proffered explanation is unworthy of credence."  Id.
(internal quotation marks omitted).

## FACTS

In the case at bar, the relevant facts taken in a light most favorable to the plaintiff as the nonmoving party, with all reasonable inferences drawn in favor of the plaintiff, to the extent supported by the record, are as follow.

Lawrence began her employment with South Carolina Electric & Gas Company (SCE&G) as a bus operator in 1991 (Lawrence depo., p. 24). ATC/Vancom took over the contract to provide fixed route public transportation services in Charleston from SCE&G. Lawrence had been promoted to the position of Safety and Security Director by Virginia Stevens, the facility's General Manager (Lawrence depo., p. 262; Stevens Aff., ¶ 3).

Following a twenty (20) month layoff due to economic conditions between approximately September 2003 and May 2005, Lawrence was reinstated to employment by ATC/Vancom, but as a bus operator. (Stevens Aff., ¶ 4). On June 19, 2005, Lawrence filed a Charge of Discrimination with the EEOC alleging that she was not returned to the position of Safety and Security Director because of her race (Stevens Aff., ¶ 5). On August 14, 2005, as part of a settlement of Lawrence's Charge of Discrimination, ATC/Vancom created an additional position of Operations Supervisor (a/k/a Safety Supervisor) which focused on safety responsibilities, and Lawrence was promoted to that position (Stevens Aff., ¶¶ 6, 17; Attachment #6).

13

Thereafter, in September 2005, Veolia purchased ATC/Vancom and Lawrence became an employee of Veolia (Stevens Aff., ¶ 7). Lawrence remained in the Operations Supervisor position until her termination on April 21, 2006. (Stevens Aff., ¶ 7; Lawrence depo., p. 36).

On Saturday, March 25, 2006, at 2:30 p.m., Lawrence arrived at Veolia to begin her shift as the Operations Supervisor. (Lawrence depo., p. 65). As the Operations Supervisor, Lawrence's duties included, but were not limited to, assisting bus operators experiencing difficulties with passengers, ensuring bus routes were running on a timely manner, and investigating bus operator misconduct. (Lawrence depo., p. 36). Lawrence's duties often required her to work in the field and away from Veolia's main facility. (Stevens Aff., ¶ 7; Wheatley Aff., ¶ 3).

On March 25, 2006, at 2:45 p.m., a dispatcher, Anthony Breaker, received a call from a bus operator, Orestes Verge. (Lawrence depo., p. 60). Verge was having difficulty getting a disabled passenger on his bus. According to Verge, the disabled passenger simply refused to get on the bus and threatened to call the police. Lawrence picked up the telephone and told Verge that she would drive to his location to assist the disabled passenger. Lawrence then told Verge to proceed with his route. Lawrence then asked Breaker for keys to a Veolia vehicle, but Breaker told Lawrence that there were no available keys. Lawrence got in her

14

personal taxi business vehicle which had "ELITE LIMOUSINE
SERVICES" printed on its side doors and left to assist Verge and
the disabled passenger.  (Lawrence depo., p. 60-65).

When Lawrence arrived at the scene, the disabled passenger
was gone, and Lawrence searched unsuccessfully for the passenger.
Lawrence drove back to the Veolia facility on Leeds Avenue.
(Lawrence depo., pp. 69-70).  When Lawrence was directly in front
of the Veolia facility, Lawrence saw a Veolia bus operator,
Herman Smith, crossing Leeds Avenue on Dorchester Road in his bus
in route to the airport.  Smith appeared to be using a cellular
telephone in violation of the company's safety policy.  (Lawrence
depo., pp. 73, 84).  Lawrence decided to investigate Smith to
determine whether he was using his cellular telephone. (Lawrence
depo., pp. 84, 123-124).  Lawrence did not return to the Veolia
facility to get a company vehicle, but rather drove after Smith's
bus in her personal vehicle.  (Lawrence depo., pp. 65- 66).
Lawrence got ahead of Smith's bus and waited at the airport for
the bus to arrive.  (Lawrence depo., p. 124).  When Lawrence
arrived at the airport, she got out of her vehicle in order to
better see if Smith was using a cellular telephone.  (Lawrence
depo., p. 127).  Lawrence waived a white envelope while standing
outside her personal vehicle "ELITE LIMOUSINE SERVICES".
(Lawrence depo., pp. 127-128; Wheatley Aff., ¶ 10(I)).  When

Smith arrived, Lawrence saw that Smith was not using a cellular telephone. (Lawrence depo., p. 125).

Lawrence spent the next four (4) hours at the airport noting the arrivals and departures of various buses on her "On Time Performance Checks" sheet and returned to Veolia's main facility at approximately 7:30 p.m. (Stevens Aff., ¶ 17; Attachment #7). At the end of her shift that night Lawrence prepared her "Supervisor's Daily Report" summarizing the events of the day, but did not report her investigation of Smith's cellular telephone use. (Lawrence depo., p. 160; Stevens Aff., ¶ 17; Attachment #8).

The next day Smith complained to Jeff Wheatley, the facility's Operations Manager, that he saw Lawrence conducting her personal taxi business on company time. (Smith Aff., ¶ 3). Specifically, Smith told Wheatley that he saw Lawrence standing outside her "ELITE LIMOUSINE" van at the airport holding a cardboard welcome sign and soliciting airport customers. (Smith Aff., ¶ 3). Smith explained Lawrence's actions angered him because prior to seeing Lawrence at the airport the previous day he heard on his bus radio that Verge was having problems with a disabled passenger and there was no supervisor available to assist Verge. (Smith Aff., ¶ 4). In short, Smith told Wheatley that Lawrence was conducting her personal taxi business on

16

company time instead of helping Verge with the disabled passenger. (Smith Aff., ¶ 5).

The day after Smith complained about Lawrence, March 27, 2006, Wheatley told Virginia Stevens, Veolia's General Manager, about Smith's accusations against Lawrence. (Wheatley Aff., ¶ 6; Stevens Aff., ¶ 8). Later that day, at approximately 2:00 p.m., Wheatley was conducting a departmental meeting of supervisors including Lawrence when Stevens told everyone, "There are reports that some of you are conducting personal business on company time. That's a violation of the company policy and is grounds for immediate termination." (Lawrence depo., pp. 174-175).

Immediately after the meeting, Stevens and Wheatley met with Lawrence to discuss Smith's accusations. (Lawrence depo., pp. 175-176). Lawrence told Stevens and Wheatley she was at the airport on March 25, 2006, because she was investigating whether a bus operator was using his cellular telephone and that she drove her personal van to the airport because there were no relief vehicles available at the time of Verge's request for assistance. (Stevens Aff., ¶ 9; Wheatley Aff., ¶ 7). Lawrence told Stevens and Wheatley that while she was at the airport, she was standing outside her personal van, waiving a white envelope, but that she was merely saying "hi" to a Skycap official. (Stevens Aff., ¶ 9; Wheatley Aff., ¶ 7). She denied that she was doing personal taxi business. Id.

17

Stevens instructed Wheatley to conduct an investigation regarding Lawrence's alleged conduct on March 25, 2006. (Stevens Aff., ¶ 10; Wheatley Aff., ¶ 8). From March 27, 2006 to April 21, 2006, Wheatley investigated the matter. (Wheatley Aff., ¶ 9).

Specifically, Wheatley's investigation included the following:

> a. Interview of Herman Smith. Smith told Wheatley that he saw Lawrence at the airport, standing outside her vehicle, and holding a cardboard sign soliciting airport customers during company time instead of assisting Verge with a disabled passenger (Wheatley Aff., ¶ 10(a)).

> b. Interview of Anthony Breaker. Breaker told Wheatley that he saw Lawrence use her personal vehicle on two other occasions in February 2006 while conducting official business. Breaker also told Wheatley that relief vehicles were available on March 25, 2006. (Wheatley Aff., ¶ 10(b)).

> c. Interview of Orestes Verge. Wheatley interviewed Verge and learned that Verge did not see Lawrence until several hours after the incident with the disabled passenger. (Wheatley Aff., ¶ 10(c)).

> d. Airport log and discussion with Airport Ground Transportation. Wheatley contacted the airport and reviewed the airport log book for chartered vehicle transportation, which logs all taxi service coming through the airport, for March 25, 2006. Wheatley noted that the log book contained an entry indicating that a taxi with permit #15 identified as "ELS" entered the airport at 2:29 p.m. and left at 3:05 p.m. Wheatley contacted the Ground Transportation Office at the airport and verified that permit 15 belonged to Elite Limousine Services, Inc. and that Lawrence was the owner of the business. Wheatley also learned from the airport Ground Transportation Office that only

18

taxis are allowed in the taxi area, and if
Lawrence was engaging in work for Veolia and
investigating Smith's alleged misconduct instead
of picking up taxi customers, Lawrence would not
have been allowed in the taxi area.    (Wheatley
Aff., ¶ 10(d)).

e. Video footage.   Wheatley reviewed video from
Smith's bus which showed Lawrence's vehicle parked
in the taxi area of the airport on March 25, 2006
(Wheatley Aff., ¶ 10(e); Stevens Aff, ¶ 17;
Attachment #11).

f. Lawrence's March 25, 2006, Supervisory Report.
Wheatley reviewed Lawrence's Supervisory Report
and saw that she did not record her alleged
investigation of Smith's suspected  cellular
telephone use in her listed activities for the
day.   Wheatley already knew that all supervisors
are required to document all investigations in
their supervisory reports, even if an employee is
found not to have committed a violation.
(Lawrence depo., p. 123; Wheatley Aff., ¶ 10(f);
Stevens Aff., ¶ 17; Def. Attachment #8).

g. Interview with Alice Lawrence.   Lawrence's own
version of the facts indicated Lawrence was at the
airport, standing outside her personal vehicle,
waiving a white envelope.   (Wheatley Aff., ¶
10(g)).

h. Veolia's Policies.   Pursuant to Veolia's
Administrative Employee Handbook, supervisors are
required to use company support vehicles, or
company relief vehicles, when performing official
business.   Supervisors must obtain the vehicle
from the dispatcher, check out the key, and log
the trip with the dispatcher.   (Wheatley Aff., ¶
10(f); Stevens Aff., ¶ 17; Def. Attachment #10, p.
31).

i. Wheatley's Personal Knowledge.   Wheatley was
aware that on March 25, 2006, Veolia maintained
approximately thirty-six (36) relief vehicles for
employee use.   Wheatley never witnessed nor
received a complaint regarding a shortage of
relief vehicles. Wheatley was also aware that
Lawrence operated a taxi service with her personal

19

vehicle and he had seen two (2) different vehicles
owned by Lawrence with "ELITE LIMOUSINE SERVICES"
printed on the sides.  (Wheatley Aff., ¶ 10(i)).

j. Review of Relief Vehicle Log.  Wheatley
reviewed the Relief Vehicle Log Review kept by the
dispatchers for March 25, 2006, and the log did
not indicate that thirty-six (36) vehicles had
been checked out on March 25, 2006.  (Wheatley
Aff., ¶ 10(j)).

(Wheatley Aff., ¶10(a-j)).

Based on his investigation, Wheatley concluded that on March

25, 2006, Lawrence was at the airport in her personal vehicle

conducting her taxi business during company time.  (Wheatley

Aff., ¶ 11).  On April 21, 2006, Wheatley terminated Lawrence's

employment for "theft of time" and using her personal vehicle

instead of a relief vehicle.  (Wheatley Aff., ¶ 12; Stevens Aff.,

¶ 17; Def. Attachment #9).  Stevens did not participate in

Wheatley's investigation and decision to terminate Lawrence's

employment.  (Stevens Aff., ¶ 11; Wheatley Aff., ¶¶ 12-13).

Lawrence was given a notice of termination which reads:

Alice Lawrence

On March 30, 2006, Ginger Stevens and I had a
meeting with you concerning abandoning your shift
on March 25, 2006. This included a report that you
were conducting personal business using your own
personal vehicle during your working hours with
Veolia Transportation.
Following an extensive investigation, it has
been concluded that you did violate Veolia
Transportation "policy and procedure"; moreover,
the use of your personal vehicle to operate your
taxi business during company time is considered
"theft of time", and mandates disciplinary action.
Therefore, due to the severe nature of these

20

disciplinary offenses, your employment is hereby
terminated effective Friday, April 21, 2006.
        Jeff Wheatley

Wheatley's decision to terminate Lawrence's employment for

"theft of time" and using a personal vehicle instead of a relief

vehicle is consistent with Veolia's Administrative Employee

Handbook's provision on page 47, which states "The following

infractions are cause for immediate dismissal: Dishonesty"

(Wheatley Aff., ¶ 13; Stevens Aff., ¶ 17; Def. Attachment #10).

Wheatley affied that at no point did he consider Lawrence's

age or race during his investigation or when making his

termination decision.  (Wheatley Aff., ¶ 14).  Wheatley began his

employment at the facility on January 6, 2006, and was not aware

Lawrence filed a previous EEOC charge on June 19, 2005, or the

parties' subsequent settlement on August 8, 2005.  (Wheatley

Aff., ¶¶  2, 15).  Wheatley's affied that his decision to

terminate Lawrence was solely based on Lawrence's violation of a

legitimate company policy prohibiting dishonesty and theft of

time.   (Wheatley Aff., ¶ 16).

After Lawrence's termination, her position of Operations

Supervisor was not filled by another employee, but rather various

other Veolia employees, including African-American females over

the age of fifty (50), assumed Lawrence's job functions.

(Stevens Aff., ¶ 13).

21

During Wheatley's investigation of Lawrence's conduct on March 25, 2006, Lawrence applied for the position of Safety Training Manager. (Lawrence depo., p. 193). As a result of her termination from employment, however, Lawrence was eliminated from consideration for that position. (Stevens Aff., ¶ 12).

After Lawrence was fired, Nick Pittman, a white male under the age of forty (40) and a recent college graduate working as a Manager in Training at Veolia, was named Safety Training Manager (Stevens Aff., ¶ 12). Stevens affied that Pittman was moved to the Safety Training Manager position in order to expose him to additional areas of operation and provide more well-rounded management training. Thereafter, Pittman was transferred to another Veolia Facility as a manager. (Stevens Aff., ¶ 12).

In support of Lawrence's claims of race and age discrimination and retaliation, Lawrence alleges that: (1) three (3) similarly situated employees outside her protected classes were not terminated when they engaged in personal business on company time. (Lawrence depo., pp. 204, 220-223). Lawrence's comparators are Virginia Lewis, an unidentified bus operator, and Kristen Fletcher. Lawrence deposed that Lewis, an African-American female approximately the same age as Lawrence and a member of Amalgamated Transit Union, Local 610, was not disciplined for shopping in a grocery store while she was driving her bus route in 2003. (Lawrence depo., pp. 220-223; Stevens

22

Aff., ¶ 15). Lawrence also deposed that the unidentified bus operator was not disciplined for taking a relief vehicle home after the conclusion of his first shift and prior to beginning of his second shift. (Lawrence depo., pp. 222-223). Lawrence's last comparator is Kristen Fletcher, a salaried employee, who was not disciplined for paying personal bills and running personal errands during work hours. (Lawrence depo., p. 223; Stevens Aff., ¶ 16).

Wheatley was not aware of any of the aforementioned alleged infractions by Lewis, the unidentified bus operator, or Fletcher. (Wheatley Aff., ¶ 17). Wheatley stated that, in any event, he does not view paying bills or a running personal errands during company time to be as serious an infraction as operating a personal business for profit while on company time. (Wheatley Aff., ¶ 18).

Lawrence contends that Wheatley's investigation into the events of March 25, 2006, was improper because (1) the description of the personal vehicle Lawrence was operating that day did not have a permit to operate as a taxi at the airport; Wheatley did not speak to Verge or Breaker about the events of that day; and (3) Wheatley would not show Lawrence video footage from Smith's bus depicting Lawrence's personal vehicle at the airport that day. (Lawrence depo., pp. 205-206).

23

Lawrence claims all individual taxis at the Charleston airport are issued individual licenses. For example, instead of "ELITE LIMOUSINE SERVICES, INC." being issued one taxi license for Lawrence's fleet, Lawrence claims that both her vehicles, a blue 2002 Dodge Caravan and a 2004 Ford E-350 van, require a separate license to operate as a taxi at the airport. Lawrence claims she was using the blue 2002 Dodge Caravan as her personal vehicle and she did not have a taxi license for the blue 2002 Dodge Caravan, but rather only had a taxi license for the white 2004 Ford E-350 Econoline van. Lawrence argues therefore she could not have been operating her taxi service with the 2002 Dodge Caravan on March 25, 2006. (Lawrence depo., pp. 42, 66, 205). Lawrence did not tell Wheatley the foregoing during his investigation. (Wheatley Aff., ¶ 19).

Lawrence also testified that she thought Wheatley should have taken the following actions during his investigation: (1) believed her when she said she was not at the airport conducting personal business; (2) monitored her post-March 25, 2006, activities; and (3) spoken to her. (Lawrence depo., pp. 206-207). Importantly, Lawrence admitted during her deposition that she did not have any facts or evidence that would indicate Wheatley did not honestly believe Lawrence conducted her personal taxi business on company time. (Lawrence depo., p. 241).

24

## DISCUSSION

A review of the record and relevant case law indicates that the defendant's motion for summary judgment should be granted on the federal employment causes of action and that the court should decline to exercise jurisdiction over the state law causes of action.

First, Lawrence has not established a *prima facie* case of age or race discrimination in Veolia's decision to fire her since she cannot show that she was replaced by a person outside her protected classes or show that similarly situated employees outside her protected classes were treated more favorably. Under the McDonnell Douglas framework, Lawrence has the initial burden of establishing a *prima facie* case of race and age discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089(1981). To establish a *prima facie* case of disparate treatment, Lawrence forecast evidence that would show: (1) she is a member of a protected group; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) she was replaced by a member outside the protected class, or similarly situated employees outside the protected class were treated more favorably. Poteat v. PSC Automotive Group, Inc., 2006 WL 2828836, (W.D.N.C.2006) (citing

25

Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 285 (4th Cir. 2004).

Assuming Lawrence has established the first three elements of a *prima facie* case, she cannot establish the fourth element, that she was replaced by a member outside her protected classes or treated less favorably than similarly situated younger, Caucasian employees.

With regard to Lawrence's replacement, the record evidence demonstrates various Veolia employees, including African-American females over the age of fifty (50), assumed Lawrence's job functions after she was terminated Lawrence cannot establish she was replaced by a member outside her protected class. See, Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) (observing that evidence was insufficient to show that employer "filled" Plaintiff's position with someone outside the plaintiff's protected class, where employer split Plaintiff's duties between two divisions); Blistein v. St. John's College, 74 F.3d 1459, 1470 (4th Cir. 1996), overruled on other grounds, (concluding plaintiff failed to establish he was "replaced" where evidence reflected that alleged replacement assumed "only some of [Plaintiff's] former duties," other such duties were given to "various individuals [in plaintiff's same] protected class," and remaining "duties were not assumed by anyone").

26

Likewise, Lawrence's claim that she was unfairly disciplined as compared to substantially younger, Caucasian employees fails. Lawrence identified three (3) employees whom she alleges engaged in personal business on company time but were not terminated: (1) Virginia Lewis; (2) an unknown bus operator; and (3) Kristen Fletcher.

To establish a valid comparison of her treatment to that of the above-mentioned employees, Lawrence "must show that the comparables are similarly situated in all relevant respects." Tyler v. Ratner Companies, 2008 WL 2307517, (D.S.C. 2008), see Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992); Lanear v. Safeway Grocery, 843 F.2d 298 (8th Cir. 1988) (plaintiff must prove that he and the non-protected employee were similarly situated in all respects and the other employee's actions were of comparable seriousness to his own); Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494 (4th Cir. 1998) (unpublished) (employees similarly situated only if they "dealt with the same supervisor, [were] subject to the same standards and engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (citations omitted)), cert. denied, 527 U.S. 1036, 119 S.Ct. 2395 (1999); Smith v. Stratus Computer, Inc., 40 F.3d 11 (1st Cir. 1994) (in disparate treatment cases, employees must be similar in "all relevant

27

aspects' including performance, qualifications, and conduct)
(citation omitted), cert. denied, 514 U.S. 1108, 115 S.Ct. 1958
(1995)." Id.

Lewis, the unidentified bus operator, and Fletcher are not
similarly situated to Lawrence. Lewis, an African-American
female approximately the same age as Lawrence, is not outside
Lawrence's protected class, so she is not a proper comparator.
Similarly, since the bus operator is unidentified, Lawrence
cannot establish that employee is outside her protected class,
and additionally, the bus operator's alleged misconduct is not
similarly situated to Lawrence's misconduct. Lawrence alleges
the unidentified bus operator was not disciplined for taking a
relief vehicle home after the conclusion of his first shift and
prior to beginning his second shift. In that case, the
unidentified bus operator was not getting paid by the company
between his shifts, and therefore Lawrence cannot show that the
operator committed "theft of time."

The last comparator is Kristen Fletcher, who was not fired
for paying personal bills and running personal errands during
work hours. Again, it appears that Fletcher's alleged actions
are not similarly situated to Lawrence's misconduct. Wheatley
concluded on March 25, 2006, Lawrence ran her personal taxi
business during company time. Lawrence clearly violated Veolia's
policy and her misconduct was grounds for immediate termination

28

under that policy.  In contrast, Wheatley does not view paying
personal bills and running personal errands during company time
to be similar or as serious as conducting a side business during
company time or as grounds for immediate termination.

Lawrence did not carry her burden to show that she was more
harshly disciplined than employees outside her protected classes
for similar infractions and the defendant is entitled to judgment
as a matter of law on that basis on her race and age claims.

Lawrence's retaliation claim is similarly flawed.  To state
a prima facie case of retaliation under Title VII, an employee
must show that (1) she engaged in a protected activity; (2) the
employer acted adversely against her; and (3) the protected
activity was causally connected to the adverse actions.  Holland
v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).
Lawrence cannot satisfy the third element and her retaliation
claim should be dismissed.

Here, there is no evidence that Wheatley was aware of
Lawrence's June 19, 2005, EEOC Charge and no evidence of a causal
connection between Lawrence's termination on April 21, 2006, and
June 19, 2005, EEOC Charge.  The ten (10) month separation of
time between Lawrence's EEOC Charge and her termination is too
long to satisfy the third element of Lawrence's prima facie
retaliation case.  See, Clark County Sch. Dist. v. Breeden, 532
U.S. 268, 273, 121 S.Ct. 1508, (2001) ("The cases that accept

29

mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close[.]'"); Price, 380 F.3d at 213 ("generally the passage of time (nine to ten months in this case) tends to negate the inference of discrimination"); Pascual v. Lowe's Home Centers, Inc., 193 Fed.Appx. 229, 233, 2006 WL 2226571 (4th Cir. 2006) (unpublished) (three to four months is too long to establish temporal proximity); Tolley v. Health Care and Retirement Corp., Inc., 133 F.3d 917, 1998 WL 24972 (4th Cir. 1998 (unpublished) (four months is too long). Indeed, the long period of time here between the protected activity and the alleged adverse actually negates any inference that a causal connection exists between the two. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998).

Finally, Lawrence's conclusory opinion is insufficient to rebut Veolia's legitimate, non-discriminatory reason for terminating Lawrence's employment and not promoting her. Lawrence was not considered for the promotion because she had been fired for a serious company infraction and Lawrence admitted that she has no evidence that Wheatley did not believe that she conducted her personal taxi business while on the clock for the defendant. That is the only belief that is relevant to the

30

inquiry of why Wheatley made his decisions.  It is of no moment
that Lawrence believes that Wheatley surely could not have
concluded that she was conducting her personal business on
company time because, again in her opinion, his investigation was
so flawed.  Lawrence is not entitled to a jury trial to determine
whether Wheatley should have investigated her more or
differently.

Regardless of what action Lawrence believes Wheatley should
have taken or what information Lawrence believes Wheatley should
have relied upon, Lawrence's admission that she was at the
airport, standing outside her personal vehicle, which had ELITE
LIMOUSINE SERVICES written on the side doors, waiving a white
envelope, all while allegedly conducting an investigation that
was never documented in Lawrence's Supervisory Report, and
Wheatley's aforementioned investigation, make it simply illogical
to conclude Wheatley did not believe that Lawrence was conducting
her personal taxi business on March 25, 2006.

In short, "[i]n determining whether a plaintiff has produced
sufficient evidence of pretext, the key question is not whether
the stated basis for termination actually occurred, but whether
the defendant believed it to have occurred."  Macias Soto v.
Core-Mark Int'l., Inc., 521 F.3d 837, 842 (8th Cir. 2008);
Holland, 487 F.3d at 220 (whether employee actually engaged in
misconduct is "irrelevant").

Hence, it appears that Lawrence's race and age discrimination claims as well as her retaliation claim should be dismissed.

## **BREACH OF CONTRACT AND DEFAMATION CAUSES OF ACTION**

Lastly, if the court accepts this report and recommendation the federal causes of action will drop from the case and only the state law causes of action for breach of contract and defamation will remain.  Because the federal claims should be dismissed before trial, the factors of judicial economy, convenience, fairness, and comity suggest that this court ought to decline jurisdiction over the remaining appended state law claim against Veolia.  See, 28 U.S.C. § 67(c)(3).

## **CONCLUSION**

Accordingly, for the aforementioned reason, it is recommended that the defendants' motion for summary judgment on the federal employment discrimination causes of action be granted, that the court exercise its discretion to decline to exercise jurisdiction over the state law causes of action, and that this matter be ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
September __18__, 2008

32