IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Alice L. Lawrence, ) | |
| ) | C/A No.: 2:07-2722-MBS |
| Plaintiff, ) | |
| ) | **O R D E R** |
| vs. ) | |
| ) | |
| Veolia Transportation Services, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

I. PROCEDURAL HISTORY

On August 7, 2007, Plaintiff Alice Lawrence filed an employment discrimination complaint against Defendant Veolia Transportation Services, Inc. alleging racial discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000 et seq. ("Title VII"), and discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., as well as state law claims for breach of contract, defamation, and defamation *per se*. Compl. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Robert S. Carr for a Report and Recommendation. On July 2, 2008, Defendant filed a Motion for Summary Judgment. Def's Notice and Mot. for Summ. J. Plaintiff filed a response to this motion on August 11, 2008. Memo. in Opp'n to Def's Mot. for Summ. J. A reply was filed by Defendant on August 19. 2008. Def's Reply to Pl.'s Response to Def.'s Mot. for Summ. J.

On September 18, 2008, the Magistrate Judge issued his Report and Recommendation finding that Defendant's motion for summary judgment should be granted with regards to the federal employment discrimination claims. Report and Recommendation. The Magistrate Judge further recommended that this court decline to exercise jurisdiction over any state law claims. Id. Report

and Recommendation. Subsequent to the Report and Recommendation, pursuant to FED. R. CIV. P. 41, the parties agreed to dismiss all pending state law claims. Rule 41 Stipulation for Dismissal with Prejudice. On October 6, 2008, Plaintiff filed objections to the Report and Recommendation. Pl.'s Objection to Report and Recommendation of United States Magistrate. Defendant filed a reply to Plaintiff's objection on October 13, 2008. Def.'s Response to Pl.'s Objections to the Magistrate's Report and Recommendation.

## II.  STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## III.  FACTS

The facts are set out in detail in the Report and Recommendation and shall only be summarized here. In 1991 Plaintiff, an African-American female, began working for South Carolina Electric & Gas Company ("SCE&G") in Charleston, South Carolina as Dispatcher/Supervisor and Operator. Compl. ¶ 8-10. At that time, SCE&G provided public transportation services in Charleston. Id. at ¶ 10. In 1998, Plaintiff was promoted to Supervisor and Safety Trainer. Id. at ¶ 14. At a point after this promotion, ATC/Vancom ("ATC") began providing the fixed route transportation services to the City of Charleston pursuant to its contract with Charleston Area

Regional Transit Authority ("CARTA"). Id. at ¶ 15. Because of economic circumstances, Plaintiff was laid off and remained out of the employ of ATC between September 2003 and May 2005. Mot. for Summ. J., Ex. 3 at ¶ 4. Plaintiff was rehired as a bus operator. Id. On June 19, 2005, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that ATC's failure to return her to the previous supervisory position was because of Plaintiff's race. As part of a settlement on the EEOC claim, Plaintiff was named an Operations Manager for ATC's Charleston office. Id., Ex. 6. In September 2005, Defendant purchased ATC, thereby making Plaintiff an employee of Defendant. Id., Ex. 3 at ¶ 7.

On the date in question, Plaintiff was serving in her capacity as Operations Manager for Defendant, a position that often required Plaintiff to work away from Defendant's main facility in Charleston. Id., Ex. 2 at 5 [hereinafter Pl.'s Dep.]. At 2:45 p.m., Plaintiff spoke to Orestes Verge, a bus operator who was having a difficult time bringing a disabled passenger onto a bus. Id. at 5; Compl. ¶ 35. Typically in such circumstances, Defendant would use a corporate vehicle to transport herself to the situation; but as there were no corporate vehicles available, Plaintiff used her personal taxi business vehicle, which had "ELITE LIMOUSINE SERVICES" printed on the doors, to travel to Verge's location. Pl.'s Dep. at 6-7. Plaintiff arrived at the radioed location, and unable to find the disabled passenger, Plaintiff returned to Defendant's facility on Leeds Avenue. Id. at 7-8. Prior to arriving at Defendant's facility, Plaintiff observed bus driver Herman Smith with his hand held up to his ear. Id. at 8-10. Smith appeared to be using a cellular telephone in violation of Defendant's safety policy. Id. Plaintiff followed Smith's bus to the airport in her personal vehicle, arriving at the location prior to Smith. Id. at 10. At the airport, Plaintiff verified that Smith was not in violation of company policy. Id. Plaintiff remained at the airport to verify the arrival and departure of various

buses. Mot. for Summ. J., Ex. 3 at ¶ 17; Mot. for Summ. J., Ex. 7. At the end of her shift, Plaintiff prepared her "Supervisor's Daily Report," which summarizes the day's events. Id., Ex. 8. At no point in this report did Plaintiff mention traveling to the airport to investigate Smith. Id.

The following day, Smith told Jeff Wheatley, Defendant's Operations Manager, that he witnessed Plaintiff operating her personal taxi business at the airport instead of assisting with the disabled passenger. Id., Ex. 5 at ¶ 5. On March 27, 2006, Wheatley told Virginia Stevens, Defendant's General Manager, about Smith's allegations. Id., Ex. 4 at ¶ 6. During a meeting between herself, Stevens, and Wheatley, Plaintiff claimed that she was at the airport on March 25, 2006 to investigate whether Smith was improperly using his cellular telephone and that she used her personal vehicle because there were no company vehicles available. Id., Ex. 3 at ¶ 9. Plaintiff denied the allegation that she was soliciting customers for her personal taxi service. Id., Ex. 4 at ¶ 7.

From March 27, 2006 through April 21, 2006, Wheatley investigated the events of March 25, 2006 at Stevens' behest. Id. at ¶ 9-10. Based on this investigation, Wheatley concluded that on the day in question, Plaintiff conducted her personal business during company time. Id. at ¶ 11. As a result, Plaintiff was terminated from her position for theft of time and violation of existing company policies and procedures. Id., Ex. 9. Wheatley maintains that the decision to terminate Plaintiff rested only with him and was not based on any inherent characteristic of Plaintiff, but rather, was in line with the Employee Handbook. Id., Ex. 4 at ¶ 12-14; Id., Ex. 10.

After her termination, Plaintiff's former position of Operations Supervisor was not filled by a single employee of Defendant, but rather by numerous existing employees, some of whom were African-Americans over the age of fifty. Id., Ex. 3 at ¶ 13. While the investigation of Plaintiff was

4

ongoing, she applied for the open position of Safety Training Manager. Id., Ex. 2 at 15. Plaintiff was removed from consideration after her termination. Id., Ex. 3 at ¶ 12. The position of Safety Training Manager was eventually filled by Nick Pittman, a white male under the age of forty who was a recent college graduate and was working for Defendant as a Manager in Training. Id.

Plaintiff objects to the factual determinations of the Magistrate Judge, arguing that the Report and Recommendation omitted several facts alleged by Plaintiff. Pl.'s Objection to Report and Recommendation of United States Magistrate 1-4. But as Defendant properly indicates, all of the alleged "omissions" are facts previously raised by Plaintiff in previous motions and responses. Def.'s Response to Pl.'s Objections to the Magistrate's Report and Recommendation 1. Indeed, some of the facts that Plaintiff points to are those which were included in the Report and Recommendation. This court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982).

## IV.  DISCUSSION

Summary Judgment

FED. R. CIV. P. 56(c) provides that summary judgment shall be rendered when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the non-moving party.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. Id. Summary judgment should only be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. McKinney v. Bd. of Trustees of Maryland Cmty. College, 955 F.2d 924, 928 (4th Cir. 1992).

Retaliation

Plaintiff alleges that her discharge and lack of promotion were in retaliation for her having engaged in activity protected by Title VII. Compl. ¶ 60-63. The Magistrate Judge correctly explained that in the Fourth Circuit, a *prima facie* case of retaliation under Title VII is established when a plaintiff shows that (1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) the protected activity was causally connected to the adverse action. Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). The Supreme Court has found that the temporal proximity between the protected activity and the adverse action described in the third plank of the Holland test must be "very close." Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)). The Fourth Circuit has found that a gap of three to four months is too long to establish temporal proximity. See Pascual v. Lowe's Home Centers, Inc., 193 F. App'x 229, 233 (4th Cir. 2006) (unpublished); Tolley v. Health Care and Retirement Corp., Inc., 133 F.3d 917 (4th Cir. 1998) (unpublished).

If a plaintiff can make a *prima facie* case, then the burden-shifting framework created by the Supreme Court in McDonnell Douglas v. Green becomes applicable. 411 U.S. 792, 802 (1973). Under this framework, the burden of going forward shifts to the defendant, who may rebut the

allegation by producing evidence of a "legitimate, non-discriminatory reason for taking the adverse employment action." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004) (quoting Bryant v. Aiken Regional Medical Centers Inc., 333 F.3d 536, 543 (4th Cir. 2003) (internal citation omitted)). The burden shifted to the defendant is one of production, rather than persuasion. Moore v. Mukasey, 2008 WL 5424083, *3 (4th Cir. December 30, 2008) (quoting Holland, 487 F.3d at 214) (unpublished). Provided that a non-discriminatory reason is given, a plaintiff must then show that the proffered reason is but a pretext for retaliation. Smith v. First Union Nat. Bank, 202 F.3d 234, 248 (4th Cir. 2000). A plaintiff proves such pretext by showing that the proffered reason "was false and that discrimination was the real reason for the challenged conduct." Id. (quoting Jiminez v. Mary Washington College, 57 F.3d 369, 377-78 (4th Cir. 1995)).

In the case at bar, the Magistrate Judge correctly noted that ten months elapsed between Plaintiff's June 19, 2005 filing with the EEOC and her termination on April 21, 2006. Report and Recommendation 29. Such an elapsed period of time is said to be too long to satisfy the third prong of Holland. Id. Plaintiff objects to the Magistrate Judge's finding, claiming that the retaliation claim in this case is not based on temporal proximity, but rather that the protected activity and the adverse action are "linked in a continuum of retaliation activity." Pl.'s Objection to Report and Recommendation of United States Magistrate 7. Plaintiff contends that viewed on this continuum, the amount of elapsed time between a protected activity and adverse action is not ten months, but rather only three months. Id. However, as Defendant properly indicates, even this shorten amount of elapsed time runs afoul of the clear language of Pascual and Tolley. Having failed to meet the third prong of the Holland test, this court finds that the Magistrate Judge was correct in finding that Plaintiff has failed to make a *prima facie* case for retaliation.

The Magistrate Judge further found that, even if Plaintiff was able to make a *prima facie* case, Defendant possessed a legitimate and non-discriminatory reason for taking the adverse employment action. Report and Recommendation 30. Plaintiff objects to this finding, arguing that Defendant's proffered reasons are nothing more than a pretext for discriminatory action. Pl.'s Objection to Report and Recommendation of United States Magistrate 9-14. This court agrees with the Magistrate Judge. While Plaintiff argues that Wheatley's investigation was a "sham," she provides no support for this argument. Id. at 9. All Plaintiff provides is a list of facts that she believes shows that Wheatley's investigation should have resulted in another outcome. As the Magistrate Judge properly noted, the only relevant question is what Wheatley believed at the time. Report and Recommendation 30. " It is not necessary to decide 'whether the [proffered] reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" Black v. Potter, 2008 WL 509475, *12 (D.S.C. Feb. 21, 2008) (quoting Hawkins v. Pepsico, 203 F.3d 274, 279 (4th Cir. 2000)). The evidence does not show that Wheatley acted for reasons other than those stated. This court agrees with the Magistrate Judge that summary judgement should be granted in favor of the Defendant on the retaliation claim.

Race Discrimination

Plaintiff also alleges that Defendant discriminated against her on the basis of her race, in violation of Title VII. Compl. ¶ 45-51. Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, Plaintiff may proceed under the McDonnell Douglas burden-shifting framework. 411 U.S. at 802. Under this

method, Plaintiff must first establish a *prima facie* case of discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). A *prima facie* case for a discrimination claim under Title VII requires a plaintiff to show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for her job and her performance was satisfactory; and (4) she was replaced by a member outside the protected class, or similarly situated employees outside the protected class were treated more favorably. Love-Lane v. Martin, 355 F.3d 766, 787 (4th Cir. 2004); Poteat v. PSC Automotive Group, Inc., 2006 WL 2828836, *3 (W.D.N.C. September 29, 2006) (citing Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 285 (4th Cir. 2004)).

Similar to a retaliation claim, once Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's treatment. See McDonnell Douglas, 411 U.S. at 802. If Defendant articulates such a reason, Plaintiff bears the ultimate burden of persuasion and must show, by a preponderance of the evidence, that Defendant's proffered reason for the treatment is pretextual. Id. at 804. Although the evidentiary burdens shift between the parties under the McDonnell Douglas framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, (1981); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

In this case, the Magistrate Judge found that Plaintiff failed to carry her initial burden, proving a *prima facie* case of discrimination. Report and Recommendation 26. Specifically, the Magistrate Judge found that Plaintiff could not prove that she was replaced by a member outside her protected class or that she was treated less favorably than similarly situated employees outside the

protected class. Id. This determination stemmed from the fact that after her termination, many of Plaintiff's job responsibilities were assumed by African-Americans. Id. In addition, the Magistrate Judge correctly determined that the three named individuals whom Plaintiff claimed were treated differently from the way she was treated, despite being similarly situated to Plaintiff, are not evidence of disparate treatment. Id. at 28. Virginia Lewis is an African-American, and thus, is not outside Plaintiff's protected class. Id. An unidentified bus operator is not comparable to Plaintiff as the bus operator did not commit "theft of time." Id. Kristen Fletcher paid personal bills and ran personal errands during company time, which is not equivalent to Plaintiff's actions pursuant to Defendant's policies and regulations set forth in Defendant's Administrative Employee Handbook. Mot. for Summ. J., Ex. 10 at 5.

Plaintiff objects to this determination only by stating that there exist genuine issues of material fact with regard to the retaliation claim, and thus, the racial discrimination claim should also be allowed to go forward. Pl.'s Objection to Report and Recommendation of United States Magistrate 14-15. This court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano, 687 F.2d at 47-48.

Plaintiff also objects to the Magistrate Judge's failure to find that Defendant had racially discriminated against Plaintiff by hiring Nick Pittman, rather than Plaintiff, to serve as the permanent Safety Training Manager for Defendant's Charleston office.[1]  Pl.'s Objection to Report and

---

[1]     Between November 2005 and February 2006, then Safety Training Manager Kristen Fletcher was on maternity leave. Def. Veolia's Answer and Additional Defenses to Pl.s' Compl. ¶ 32. Plaintiff applied for this interim position. Pl.'s Dep. 15. Despite Plaintiff's application, Defendant named Nick Pittman to serve in this interim capacity. Def. Veolia's Answer and Additional Defenses to Pl.s'

Recommendation of United States Magistrate 2-4, 6-8. However, Pittman was named Safety Training Manager subsequent to Plaintiff having been terminated, for a legitimate reason, from her employment with Defendant. Mot. for Summ. J., Ex. 3 at ¶ 12. Plaintiff cannot claim that she suffered an "adverse employment action" by failing to be placed in a position with an employer for whom she no longer was an employee. Even assuming Plaintiff made a *prima facie* case, Pittman was a recent college graduate who, prior to his appointment as Safety Training Manager, was a "Manager in Training" for Defendant. Id. According to Defendant, such qualifications differentiate Pittman from Plaintiff. Id. Plaintiff does not show that this legitimate reason was pretextual. Therefore, Plaintiff's claim is unable to meet the requirements of McDonnell Douglas. See 411 U.S. at 802.

Because Plaintiff failed to make a *prima facie* case for racial discrimination, this court agrees with the conclusion of the Magistrate Judge that summary judgment should be granted in favor of the Defendant on the racial discrimination claim.

Age Discrimination

The ADEA prohibits an employer from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Success on an ADEA claim hinges on whether a plaintiff can demonstrate, by a preponderance of the evidence, that her age "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." Reeves, 530 U.S. at

---

Compl. ¶ 32. Plaintiff filed an action against Defendant, alleging that her failure to be named to this interim position was the result of discrimination. Pl.'s Dep. 15. This claim was eventually settled by both parties. Id.

141(internal citations omitted). In the absence of direct evidence, a plaintiff can employ "pretext" framework consisting of the burden-shifting employed in McDonnell Douglas. 411 U.S. at 802. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311 (1996); see also Smith v. City of Jackson, Miss., 544 U.S. 228, 252 (2005).

As is the case with claims of racial discrimination under Title VII, ADEA cases operating from the pretext framework require a *prima facie* case to be established by the plaintiff. The Supreme Court has outlined a four-part test for such a case (1) the plaintiff was in the age group protected by the ADEA;[2] (2) the plaintiff was discharged or demoted; (3) at the time of the plaintiff's discharge or demotion, she was performing her job at a level that met her employer's legitimate expectations; and (4) following plaintiff's discharge or demotion, she was replaced by someone of comparable qualifications outside the protected class. O'Connor, 517 U.S. at 310-11. If such a *prima facie* case is met, then the McDonnell Douglas burden-shifting analysis arises and the defendant must show a legitimate and nondiscriminatory reason for the adverse employment action. Williams v. Cerberonics, Inc., 871 F.2d 452, 455-56 (4th Cir. 1989). If the defendant meets its burden, then the McDonnell Douglas framework ceases to be relevant and the "sole remaining issue [i]s discrimination *vel non*." Reeves, 530 U.S. at 143.

In the case at bar, the Magistrate Judge found that Plaintiff failed to carry her initial burden, in the pretext framework, as she failed to prove a *prima facie* case of discrimination. Report and Recommendation 26. This is due to the fact that there is no evidence that she was replaced by someone of comparable qualifications outside the protected class, as required by O'Connor. Id. In

---

[2] An individual must be at least forty years old to be protected by the ADEA. 29 U.S.C. § 631(a).

fact, the Magistrate Judge found that of the employees who took over various aspects of Plaintiff's job, many of them were over the age of fifty, and therefore, within the class protected by the ADEA. Id.

Again, Plaintiff objects to this determination only by stating that there exist genuine issues of material fact with regards to the retaliation claim, and thus, the age discrimination claim should also be allowed to go forward. Pl.'s Objection to Report and Recommendation of United States Magistrate 14-15. This court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano, 687 F.2d at 47-48. Plaintiff also objects to the Magistrate Judge's failure to find that Defendant had engaged in age discrimination against Plaintiff by hiring Nick Pittman, rather than Plaintiff, to serve as Safety Training Manager for Defendant's Charleston office. Pl.'s Objection to Report and Recommendation of United States Magistrate 2-4, 6-8. However, for the reasons previously stated, this objection has no merit.[3] Having failed to make a *prima facie* case for age discrimination, this court agrees with the conclusion of the Magistrate Judge that summary judgment should be granted in favor of the Defendant on the age discrimination claim.

---

[3] See supra 10-11.

## V.  CONCLUSION

After reviewing the entire record, the applicable law, the briefs of counsel, the findings and recommendations of the Magistrate Judge, and Plaintiff's objections, this court adopts the Magistrate Judge's Report and Recommendation.  For the reasons set out hereinabove Defendant's motion for summary judgment (Entry 36) is **granted**.

**IT IS SO ORDERED**.

                                          s/Margaret B. Seymour
                                          United States District Judge

Columbia, South Carolina
March 30, 2009